IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| WILLIE BELL DIXON and DERRELL A. JACKSON, | |
| Plaintiffs, | |
| vs. | CIV. ACTION NO. __CV 321-050__ |
| LAURENS COUNTY SCHOOL DISTRICT, BRUCE WOOD, and SUNNY FRANKS, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Willie Bell Dixon ("Dixon") and Derrell A. Jackson ("Jackson") (*collectively*, "Plaintiffs"), by and through the undersigned Counsel of Record, and hereby file this Complaint for Damages against Defendants Laurens County School District, Bruce Wood, and Sunny Franks (*collectively*, "Defendants"), respectfully showing the Court as follows:

## I.  JURISDICTION AND VENUE

### 1.

Plaintiffs commence the above-captioned case pursuant to:  (a) the Fair Labor and Standards Act, 29 U.S.C. §§ 201, *et seq.*, ("FLSA") for unpaid minimum and overtime wages, as well as retaliation; (b) the Americans with Disability Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, ("ADA") for

disability discrimination and retaliation; (c) the Rehabilitation Act of 1973, 29 U.S.C.§§ 701, *et seq.*, ("Rehab Act") for disability discrimination and retaliation; (d) the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2601, *et seq.*, ("FMLA") for interference and retaliation; (e) 42 U.S.C. § 1981, the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1981 ("Section 1981") for race discrimination and retaliation; and (f) the laws of the State of Georgia for breach of contract, assault, battery, intentional infliction of emotional distress, as well as negligent retention and supervision.[1]

2.

The United States District Court for the Southern District of Georgia ("Court") has original jurisdiction over the FLSA, ADA, Rehab Act, and FMLA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the State law claims, which arise from the same nucleus of operative facts as the Title VII claim, pursuant to 28 U.S.C. § 1367.

---

[1] Plaintiffs will amend to assert additional claims upon receipt of Dixon's Dismissal and Notice of Rights from the Equal Employment Opportunity Commission.

3.

Venue is proper in the Southern District of Georgia, Dublin Division, pursuant to 28 U.S.C. § 1391(b) because Defendants reside and/or maintain place(s) of business in this District and Division, and the unlawful conduct complained of herein occurred in this District and Division.

4.

Jackson satisfied administrative prerequisites to institute this matter. Specifically, Jackson timely filed a Charge of Discrimination with the Equal Employment Opportunity ("EEOC") within 180 calendar days from the day the discrimination and retaliation took place (Charge No. 415-2021-01185). Moreover, Jackson timely commenced the above-captioned case within ninety (90) days of receipt of Jackson's Notice of Right to Sue, dated August 16, 2021.[2]

## II.  PARTIES

5.

Plaintiff Willie Bell Dixon ("Dixon") is a seventy-four (74) year-old, African-American female, citizen of the United States, resident of the State of Georgia, subject to this Court's jurisdiction, and entitled to bring an action of this nature and type.

---

[2] Upon receipt, Plaintiffs will amend the above-captioned complaint to reflect receipt of Dixon's Notice of Right to Sue.

6.

At all relevant times, Dixon was an "employee" of Defendant Laurens County School District within the meaning of, among other laws, the FLSA, 29 U.S.C. § 203.

7.

Plaintiff Derrell A. Jackson ("Jackson") is a sixty-two (62) year-old, African-American male, citizen of the United States, resident of the State of Georgia, subject to this Court's jurisdiction, and entitled to bring an action of this nature and type.

8.

At all relevant times, Jackson was an "employee" of Defendant Laurens County School District within the meaning of, among other laws, the FLSA, 29 U.S.C. § 203, the ADA, 42 U.S.C. § 12111, the FMLA, 29 U.S.C. § 2611, and Section 1981.

9.

Defendant Laurens County School District ("School District") is a public school district located in Laurens County, Georgia, that engages in inter-State commerce and is subject to the jurisdiction of the Court.

10.

The School District is and was, at all relevant times, an employer engaged in an industry affecting inter-State commerce within the meaning of, among other laws, the FLSA, the ADA, the FMLA, and Section 1981, employing more than fifty (50) persons for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year while engaging in an industry affecting commerce.

11.

The School District's principal office is located at 467 Firetower Road, Dublin, Georgia 31021.

12.

The School District may be served with process through Clifford Garnto ("Garnto"), Superintendent, Laurens County School District, 467 Firetower Road, Dublin, Georgia 31021.

13.

Defendant Bruce Wood ("Wood") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

14.

Wood was, at all relevant times, the School District's Bus Shop Foreman, involved in the day-to-day operation of the School District, and regularly exercised authority to:  (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of the School District's Bus Shop.

15.

At all relevant times, Wood supervised Dixon and Jackson while participating in the unlawful conduct described herein.

16.

Wood may be served with process at the School District's Bus Shot located at  Co Road 337, Dublin, Georgia 31021.

17.

Defendant Sunny Franks ("Franks") is and was, at all relevant times, a Caucasian female, citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

18.

Franks was, at all relevant times, the School District's Human Resources Coordinator, involved in the day-to-day operation of the School District, and regularly exercised authority to:  (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of the School District's Human Resources Department.

19.

At all relevant times, Franks exercised control and/or supervision over Dixon and Jackson while participating in the unlawful conduct described herein.

20.

Franks may be served with process at the School District's offices located at 467 Firetower Road, Dublin, Georgia 31021

### III.  STATEMENT OF FACTS

**A.    Jackson Is Harassed, Discriminated/Retaliated Against, and Unlawfully Denied Leave While Being Paid Below FLSA Wages**

21.

Derrell A. Jackson ("Jackson") is a sixty-two (62) year-old, African-American male.

22.

Due to a previous occupational injury with the Dublin City School District, Jackson developed a serious heart and lung condition requiring medical treatment.

23.

At all relevant times, Jackson was a qualified individual under, *inter alia*, the ADA, Rehab Act, and FMLA.

24.

The School District operates, under the control of the Board of Education, public schools throughout Laurens County, Georgia.

25.

At all relevant times, the School District received Federal financial assistance and funding related to various programs, including, but not limited to, Title I Part A Academic Achievement Awards (CFDA 84.010)[3]—State Program Code 1752, Title I Part C Migrant (CFDA 84.011)—State Program Code 1762, Title II Part A Teacher Quality (CFDA 84.367)—State Program Code 1784, Title III Part A Language Instruction for LEP and Immigrant Student (CFDA 84.365A)—State Program Codes 1811 and 1816, Title IV Part

---

[3] The CFDA refers to the Catalog for Federal Domestic Assistance, which is a compilation of U.S. Federal assistance programs

A Student Support and Academic Enrichment, Title V Part B Rural Education Achievement Program (REAP) (CFDA 84.358)—State Program Code 1847, IDEA 619 Preschool, and IDEA 611 Flowthrough.

26.

After leaving the Dublin City School District, Jackson sought employment with the School District.  During the hiring process, Jackson verbally advised Greg Pauldo ("Pauldo"), Transportation Director, about Jackson's serious heart and lung conditions, described Jackson's medical treatments, and advised Pauldo of the need to take leave(s) to obtain medical treatment.  In response, Pauldo stated that Pauldo was already aware of Jackson's serious medical conditions and agreed to hire Jackson.

27.

Following the offer of employment, pursuant to Pauldo's instructions, Jackson completed a medical examination, when the physician cleared and gave Jackson medical permission to perform as a School Bus Driver.

28.

In or about September 2019, Jackson became employed by the School District as a full-time School Bus Driver responsible for, among other duties, transporting students to and from school, as well as other duties, tasks, and assignments from Pauldo and other School District employees.

29.

When offering Jackson employment as a School Bus Driver with the School District, Pauldo promised to pay Jackson approximately $1,400.00 to $1,800.00 per month.   However, the School District only paid Jackson approximately $708.75 per month—less than the FLSA-mandated minimum wage.  Based upon the promised approximate $1,400.00 to $1,800.00 per month compensation, Jackson agreed to work as a School District Bus Driver rather than seek and/or pursue alternative employment opportunities.

30.

Shortly after commencing employment with the School District, Jackson complained about not receiving the promised approximate $1,400.00 to $1,800.00 per month compensation and/or the FLSA-mandated wages. Whenever Pauldo complained, School District employees, including Pauldo, simply respond, "We'll look into it and fix the problem."  However, Jackson never received the promised approximate $1,400.00 to $1,800.00 per month compensation, or the FLSA-mandated wages, as a School Bus Driver.

31.

Despite not receiving the promised compensation, during the course of employment, Jackson diligently and competently performed all tasks while meeting or exceeding all performance expectations as a School Bus Driver.

32.

While employed by the School District as a School Bus Driver, Jackson's schedule started daily at 5:30AM with bus inspections followed by morning bus routes lasting approximately 3.25 hours.   Beginning at 1:30PM, Jackson conducted additional bus inspections followed by afternoon bus routes lasting approximately 4.25 hours.  Additionally, Jackson completed inspections and bus routes for field trips and other school activities, as well as covered another bus route when a driver was out of work.  Although Jackson often individually worked up to (and exceeding) 37.5 hours per week (approximately 2100 hours during the course of employment), the School District refused to pay Jackson at the FLSA-mandated wages.  Rather, regardless of the hours worked in a workweek, the School District paid Jackson a flat $708.75  per workweek—less than the FLSA-mandated wages.

33.

During the course of Jackson's employment, the School District failed and/or refused to properly track and/or record the hours worked by Jackson as a School Bus Driver, but rather, simply paid Jackson a flat $708.75  per workweek regardless of the number of hours worked each workweek.

34.

In addition to the failure to compensate at the agreed-upon or the FLSA-mandated rates, Jackson also faced discrimination and harassment based upon disability and race.  For example, Franks made disparaging comments about Jackson's pending Workers' Compensation litigation involving Jackson's former employer.  When Jackson complained to Pauldo about Franks' harassment and comments, Pauldo simply stated that the School District and the School Board was aware of the litigation and that Franks "had no business opening her mouth."

35.

Similarly, Franks constantly harassed and made disparaging comments about Jackson's serious heart and lung conditions.  When Jackson was out of work to receive medical treatment, Franks stated, in the presence of School District employees, that Franks reviewed Jackson's medication and that "we have drivers that come to work that do not need be here and we send them back home." Additionally, Franks stated that Jackson "shouldn't be driving students" because of the serious health conditions.  Jackson simply expressed love for the students and stated that he would not jeopardize the safety of the students.

36.

When Jackson again complained about Franks' harassment and discriminatory conduct, Pauldo (African-American) stated that Franks

(Caucasian) consistently undermined Pauldo's authority, especially with respect to the School Bus Drivers who were predominantly African-American. Similarly, Pauldo stated that other Caucasian School District administrators and School Board members did not approve of Pauldo hiring Jackson because Jackson was African-American and suffered from serious health conditions.  Although Pauldo stated that he would arrange a meeting with School Board Member James Brown (African-American) to address Franks' harassment and discriminatory conduct, the meeting never occurred.

37.

In early September 2020, Pauldo and Assistant Superintendent Tim Passmore ("Passmore") held a meeting to advise the Bus Drivers that, despite the COVID-19 Outbreak, there would be no social distancing on the buses and that, even if a student exhibited or complained about COVID-19 exposure or symptoms, the Bus Drivers were required to bring the student to school.  When Jackson and others inquired about potential COVID-19 exposure, Passmore simply explained the quarantine and restriction procedures governing Bus Drivers.  Based upon the likelihood of COVID-19 exposure and Jackson's serious medical conditions, immediately following the meeting, Jackson requested to take FMLA leave and Pauldo responded that he was scheduling a meeting to discuss the matter.

38.

On September 9, 2020, Jackson's Cardiologist, Dr. Gary A. Daniels, sent Pauldo and Passmore a letter, advising the School District that, due to Jackson's serious heart and lung conditions, Jackson was at high risk for contracting COVID-19.

39.

Although the School District was aware of Jackson's serious medical conditions and requests for FMLA leave, the School District never advised Jackson of his eligibility to take FMLA leave, never detailed the specific expectations and/or obligations related to Jackson's need to take FMLA leave, and never explained the consequences of any failure to meet those obligations.

40.

On September 10, 2020, Jackson met with Pauldo and Passmore, who confirmed receipt of Daniels' letter before stating the purpose of the meeting was to discuss Jackson's wages and request for FMLA leave.  First Jackson again complained about the failure to compensate Jackson at the agreed-upon rate of approximate $1,400.00 to $1,800.00 per month and/or the FLSA-mandated wages.  Despite Pauldo's promise to pay Jackson approximately $1,400.00 to $1,800.00 per month, Passmore insisted that Jackson would only receive $708.75 per month.  Then, Jackson again requested FMLA leave or to be placed in another

position within the department that would not likely result in exposure to COVID-19.  Passmore responded that, although there were no other positions, Passmore will "check into it" and that, if Jackson took FMLA leave, Jackson would have to pay for his own insurance out-of-pocket.  Nevertheless, Passmore and Pauldo then insisted that, due to the serious medical conditions, Jackson resign like several other School District employees.  Finally, Pauldo and Passmore instructed Jackson to take personal time off to consider resigning and consult an attorney to "get some disability" because Jackson was disabled.

41.

Following the September 10, 2020 meeting, Jackson was hospitalized because due to serious heart and lung conditions.  After Jackson called and advised Pauldo of the hospitalization, Pauldo then called Jackson to schedule another meeting and directed Jackson to immediately submit medical records related to the serious heart and lung conditions.  After Jackson responded that he could not immediately meet or submit the records due to the hospitalization, Pauldo stated that Pauldo would call Jackson following discharge.

42.

After Jackson was discharged from the hospital and recovering on or about September 23, 2020, Passmore called Jackson, stated that Passmore was meeting with the School District's attorney concerning Jackson's request for FMLA leave,

and requested Jackson's medical records.  Following the meeting with the School District's attorney, Passmore again called Jackson to request that Jackson immediately come the School District Office to execute some "tricky paperwork" and submit medical records.  Jackson responded that, due to the ongoing recovery following hospitalization, Jackson could not immediately come to the office.

43.

On October 1, 2020, Jackson left messages with Passmore and Pauldo about the request for FMLA leave.  Subsequently, Passmore responded and stated that Jackson was not entitled to FMLA leave.  Rather than grant Jackson's request for FMLA leave or satisfy its obligations under the FMLA, Passmore terminated Jackson's employment for *purported* job abandonment.

44.

When terminating employment, the School District also terminated Jackson's medical insurance while Jackson was receiving medical treatment for serious health conditions.

45.

Prior to the discriminatory termination of employment described herein, Jackson had not received negative reviews, disciplinary actions, or complaints concerning Jackson's professional performance.

46.

Following the termination of employment, Jackson sought unemployment benefits from the Georgia Department of Labor ("DOL"), which denied the petition despite advising Jackson that the School District terminated employment due to Jackson's "medical problems."

47.

Other employees and individuals, outside of Jackson's protected class, were treated differently because these employees and individuals, who were not at high-risk for contracting COVID-19, were not terminated or otherwise subjected to adverse employment actions associated with hospitalization and/or the request to take FMLA leave due to serious health conditions.

48.

Jackson was qualified and capable of resuming employment as a School Bus Driver following recovery from known serious health conditions and FMLA leave.

49.

Under no uncertain terms, the School District terminated Jackson's employment and punished Jackson based Jackson's complaints about harassment and discrimination, Jackson's serious medical condition, and Jackson's request to take FMLA leave.

50.

Likewise, although the School District was aware that Jackson was working overtime hours and not being compensated at the FLSA-mandated wages for certain workweeks, the School District knowingly and willfully compensated Jackson at the flat rate of $708.75 per workweek—less than FLSA-mandated wages—regardless of the hours worked during certain workweeks.

51.

As a result of Defendants' unlawful actions, Jackson has suffered, among other things, lost wages and benefits, as well as severe emotional distress.

**B.    Dixon Is Harassed, Assaulted, Battered, and Discriminated Against While Being Paid Below Minimum Wage**

52.

Dixon is a seventy-four (74) year-old, African-American female.

53.

The School District operates, under the control of the Board of Education, public schools throughout Laurens County, Georgia.

54.

In or about March 2017, Dixon became employed by the School District as Bus Shop Helper and School Bus Driver responsible for, among other duties, interacting with students, transporting students to and from school, ensuring the safety of students, assisting students with entering and existing buses, disciplining

students as needed to maintain a safe environment, inspecting the bus for safety issues, attend safety meetings and trainings as required, as well as other duties and tasks assigned by the Bus Shop Foreman, Wood.

55.

As a Bus Shop Helper and School Bus Driver, the School District paid Dixon approximately $25,000.00 per year.

56.

During the course of employment, Dixon diligently and competently performed all tasks while meeting or exceeding all performance expectations as a Bus Shop Helper and School Bus Driver.

57.

While employed by the School District, Dixon often individually worked up to (and exceeding) fifty (50) hours in certain workweeks.  After completing morning bus inspections and routes, Dixon returned to the Bus Shop to complete duties, tasks, and assignments.  When finished working at the Bus Shop, Dixon then completed afternoon bus inspections and routes.  Although Dixon often individually worked up to (and exceeding) 50 hours in each workweek, the School District refused to pay Dixon at the FLSA-mandated overtime wages.  Rather, regardless of the hours worked in a workweek, the School District paid

Dixon approximately $25,000.00 per year—less than the FLSA-mandated overtime rates.

58.

During the course of Dixon's employment, the School District failed and/or refused to properly track and/or record the hours worked by Dixon a Bus Shop Helper and School Bus Driver, but rather, simply paid Dixon approximately $25,000.00 per year regardless of the number of hours worked each workweek.

59.

Despite diligent and competent performance, and in addition to the failure to be compensated at the FLSA-mandated overtime wages, Dixon also faced discrimination and harassment based upon age and gender. For example, since the beginning of 2021, Wood viciously and constantly harassed Dixon about retiring. On almost a daily basis, Wood asked when Dixon would retire and made comments like, "You need to retire, you need to retire." On one occasion when Dixon stated, "Maybe I'll talk to my kids," Wood responded, "Why do you have to talk to your kids. You letting grown people lay up in your house and you're taking care of them. You need to retire."

60.

In addition to constant retirement pressure, Wood also assaulted and battered Dixon. On one occasion, Wood pulled off Dixon's hat and said, "Look

at that old wig, it looks like chickens been scratching it, I want to see what's under that wig." Dixon professionally responded, "Just plaits and braids." Undeterred, Wood continued to demand to see what was under the wig until Dixon relented out of fear.

61.

On another occasion in the presence of School District co-workers, Wood approached Dixon and asked, "What are you doing, jacking off?"

62.

Similarly, while Dixon was sitting in a chair and eating lunch on June 8, 2021, Wood approached and kicked Dixon's leg, resulting in severe physical pain and injuries. When Wood asked, "Why did you kick me," Wood again kicked Dixon. Although Dixon explained, "That hurts when you kick me with those old boots on," Dixon never apologized. When recounting the assault and battery at home later in the evening, Dixon cried while thinking, "Does he want me to retire that bad."

63.

Despite Wood's constant harassment, discrimination, assaults, and batteries, Dixon was afraid to complain because Garnto and Passmore were Caucasian males and close, personal friends with Wood.

64.

On or about June 21, 2021, Dixon unwillingly relented to Wood's constant retirement pressure.  However, Dixon subsequently summoned the court to complain about Wood's harassment, discrimination, assaults, and batteries to the Lauren's County School Board, where Dixon's son explained, "My mother is not a dog," and Dixon explained that she did not want to retire.  Subsequently, Dixon withdrew the forced resignation.

65.

Although the School District was aware that Jackson was not being compensated at the FLSA-mandated overtime wages for certain workweeks, the School District knowingly and willfully compensated Dixon at the flat rate of approximately $25,000.00 per year—less than the FLSA-mandated overtime wages—regardless of the hours worked during certain workweeks.

66.

As a result of Defendants' unlawful actions, Dixon has suffered, among other things, lost wages and benefits, severe physical pain and injuries, as well as severe emotional distress.

## IV.  CLAIMS FOR RELIEF

### COUNT I:
### FAILURE TO PAY MANDATED WAGES
### IN VIOLATION OF FLSA
**(Dixon and Jackson Against School District)**

67.

The FLSA requires that employers to pay employees a minimum wage, plus any expenses the employee incurs for the benefit of the employer, and that, with certain exceptions that are inapplicable to the above-captioned case, pay employees time and a half for hours worked in excess of a 40-hour workweek.

68.

At all relevant times, the relationships between Plaintiffs and the School District were employer-employee relationships within the meaning of the FLSA, such that causes of action exist where the School District failed to pay minimum and overtime rates for hours worked in excess of forty (40) hours during workweeks.

69.

During the relevant time period, Plaintiffs worked more than forty (40) hours per workweek and, therefore, Plaintiffs were entitled to be paid one-and one-half times the regular rate of pay for all hours worked over forty (40) hours in the applicable workweeks.

70.

However, during the course of Plaintiffs' employment, the School District failed to compensate Plaintiffs for the hours worked in excess of forty (40) hours per workweek.

71.

Moreover, regardless of the hours worked in a workweek, the School District paid Jackson a flat $708.75 per workweek and paid Dixon approximately $25,000.00 per year.

72.

The School District repeatedly failed to pay Plaintiffs minimum and overtime wages for hours Plaintiffs worked in violation of the FLSA.

73.

The School District knew, or showed reckless disregard for the fact, that the School District failed to pay Plaintiffs minimum and overtime compensation in violation of the FLSA.

74.

The School District's actions, policies, practices, and/or procedures violated the FLSA's minimum and overtime wage requirements because Defendants permitted Plaintiffs to work during certain periods without paying minimum or overtime wages.

75.

Under any interpretation of the terms and/or provisions, the School District's conduct in violation of the FLSA was both willful and in bad faith.

76.

As a direct result of the School District's intentional and willful unlawful acts when refusing to pay Plaintiffs minimum, let alone overtime wages, for hours worked for the School District, Plaintiffs suffered loss of income, incurring reasonable attorney's fees and litigation expenses, as well as suffered other damages.

77.

Pursuant to the FLSA, Plaintiffs therefor seek to recover unpaid minimum and overtime wages, liquidated damages in an amount equal thereto, as well as the reasonable attorney's fees and litigation expenses associated with the above-captioned case.

**COUNT II**
**DISABILITY DISCRIMINATION**
**IN VIOLATION OF THE ADA AND THE REHAB ACT**
**(Jackson Against the School District)**

78.

The ADA prohibits employers from discriminating against a qualified individual on the basis of disability.

79.

Similarly, the Rehab Act prohibits entities, which receive Federal financial assistance, from discriminating against otherwise qualified persons with disabilities in the terms, conditions, or privileges of employment.

80.

At all relevant times, the School received, *inter alia*, Federal financial assistance and funding related to and from, among other programs, the Catalog for Federal Domestic Assistance.

81.

At all relevant times, the relationship between Jackson and the School District was a relationship of "employee" to "employer," such that a cause of action exists where discrimination based on disability is alleged to be the cause of an adverse action directed to the employee by the employer.

82.

The School District violated both the ADA and the Rehab Act, such that a cause of action exists where discrimination on the basis of disability was the causative agent of adverse actions directed at Jackson by the School District.

83.

At all relevant times, the School District acted by and through its agents and employees, each of whom acted within the course and scope of their respective employment with and for the School District.

84.

During the court of employment, Jackson suffered from severe heart and lung conditions, Jackson was a qualified individual with a disability which substantially impaired one or more major life activities, and Jackson was capable of performing as a School Bus Driver despite Jackson's medical conditions.

85.

The School District regarded Jackson as having a qualified disability.

86.

During Jackson's employment, the School District had notice and knew of Jackson's qualified disability after, among other things, Jackson notified the School District of Jacksons serious heart and lung conditions, Jackson advised the School District of Jackson's hospitalization, as well as Jackson and Jackson's cardiologist requested FMLA leave due to Jackson's serious heart and lung conditions in light of the COVID-19 Outbreak.

87.

Although Jackson requested certain reasonable accommodations and brief medical leave because Jackson was at high-risk of contracting COVID-19 that would have allowed Jackson to continue performing the essential functions of Jackson's position, the School District failed to grant a reasonable accommodation, impaired Jackson's ability to receive medical treatment, and punished Jackson who needed to obtain medical treatment and medical leave due to the high-risk of contracting COVID-19.

88.

Immediately after receiving notice of Jackson's hospitalization and the need to take medical leave due to Jackson's high-risk of contracting COVID-19, as well as request for a reasonable accommodation, the School District terminated Jackson's employment.

89.

The School District terminated, in violation of the ADA and the Rehab Act, Jackson's employment because of Jackson's qualified disability and request/need for a reasonable accommodation.

90.

As a result of the termination of employment based solely upon Jackson's severe heart and lung conditions, Jackson was treated less-favorably than similarly-situated School District employees without these conditions in violation of the ADA and the Rehab Act.

91.

Consequently, Jackson was unlawfully subjected to discrimination because of an actual disability, a record of disability, and/or being regarded as an individual with disability.

92.

The effect of the conduct complained of herein has been to deprive Jackson of equal employment opportunity and to otherwise adversely affect Jackson's status as an employee solely because of Jackson's severe heart and lung conditions.

93.

The School District willfully and wantonly disregarded Jackson's rights when terminating Jackson's employment in bad faith.

94.

As a proximate and direct result of the School District's conduct, Jackson has suffered, and continues to suffer, damages, including, but not limited to, emotional distress, inconveniences, loss of income and benefits, for which Jackson is entitled to recover in an amount to be determined by the enlightened conscience of the jury.

95.

The School District's actions were willful, intentional, malicious, and conducted in bad faith with callous and/or reckless indifference to Jackson's Federally-protected rights, thereby entitling Jackson to an award of punitive damages.

**COUNT III**
**INTERFEERNCE**
**IN VIOLATION OF THE FMLA**
**(Jackson Against the School District)**

96.

The FMLA prohibits employers from interfering with employees' exercises of rights under FMLA and provides that, when an employer acquires knowledge than an employee may qualify for FMLA leave, the employer must evaluate whether the employee qualifies for FMLA protection, provide notice to the employee of the eligibility for and rights under the FMLA, as well as advise the employee of the rights-and-responsibilities under the FMLA.

97.

Because Jackson was hospitalized based upon severe heart and lung conditions, which also put Jackson at high risk for contracting COVID-19, Jackson was entitled to take leave pursuant to the FMLA.

98.

At all times relevant to this action, the relationship between Jackson and the School District was an employer-employee relationship within the meaning of the FMLA, such that a cause of action exists where Jackson was an employee as defined by the FMLA, Jackson was an eligible employee as defined by the FMLA, and the School District interfered with Jackson's entitlement to take leave pursuant to the FMLA.

99.

At all times relevant to this action, the School District acted by and through its agents and employees, each of whom acted in the course and scope of their employment with and for the School District.

100.

Jackson had an "entitlement to leave" as defined by the FMLA, 29 U.S.C. § 2612(a)(1) when Jackson was hospitalized due to serious heart and lung conditions, which put Jackson at high-risk of contracting COVID-19 during a global pandemic.

101.

Jackson satisfied all FMLA prerequisites.

102.

The School District violated the FMLA by interfering with Jackson's rights when the School District, while Jackson was hospitalized due to serious heart and lung conditions which put Jackson at high-risk for contracting COVID-19 during the global pandemic, denied Jackson's and Jackson's cardiologist's request for FMLA leave, failed to provide Jackson with notice of Jackson's rights-and-responsibilities under the FMLA, and terminated Jackson's employment immediately after Jackson requested FMLA leave.

103.

Due to the School District's interference, Jackson was unable to exercise Jackson's full rights under FMLA in a meaningful way.

104.

As a direct and proximate result of the above-described actions, the School District has deprived Jackson of an employment benefit.

105.

Additionally, Jackson has suffered and continues to suffer loss income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits, as well as humiliation, emotional pain, mental distress, inconveniences, and mental anguish.

106.

The School District's interferences were willful, deliberate, and intended to cause Jackson harm and/or were committed with reckless disregard of harm caused to Jackson, and in derogation of Jackson's Federally-protected rights.

107.

As a result, Jackson is entitled to both equitable and monetary relief for the School District's violation of the FMLA, including, but not limited to, back pay, front pay or reinstatements, attorney's fees, and costs of litigation.

108.

Jackson is also entitled to liquidated damages for the School District's violation of Jackson's rights under the FMLA because the School District's actions were willful violations of the FMLA.

**COUNT IV**
**RACE DISCRIMINATION**
**IN VIOLATION OF SECTION 1981**
**(Dixon and Jackson against School District)**

109.

At all relevant times, Plaintiffs were in a protected age group, African-American, and were qualified to continue employment as School Bus Drivers.

110.

At all relevant time, the relationship between Plaintiffs and the School District was a relationship of "employee" to "employer," within the meaning of Section 1981, such that a cause of action exists where discrimination on the basis of race is alleged to be the cause of an adverse action directed to the employee by the employer.

111.

At all relevant times, the School District acted by and through its agents and employees, including, but not limited to, Wood, Franks, and Passmore, each of whom acted in the course and scope of their employment with and for the School District.

112.

Despite Plaintiffs' diligent performance, the School District intentionally discriminated against Plaintiffs on the basis of race by continuously and repeatedly subjecting Plaintiffs to harassment, terminating Plaintiffs' employment, as well as the other unlawful conduct alleged in this complaint.

113.

Defendants did not harass, disparage, and/or terminate the employment of Plaintiffs' non-African-American and Caucasian colleagues.

114.

Defendants harassed, disparaged, and terminated Plaintiffs' employment based solely on Plaintiffs' race.

115.

The effect of the conduct complained of herein has been to deprive Plaintiffs of equal employment opportunity and to otherwise adversely Plaintiffs' status as an employee solely because of Plaintiffs' race.

116.

Defendants' actions constitute unlawful race discrimination in violation of Section 1981.

117.

As a result of, *inter alia*, the harassment and termination of employment based solely upon Plaintiffs' race, Plaintiffs' were treated less-favorably than similarly-situated, non-African-American and Caucasian employees of Defendants in violation of Section 1981.

118.

Defendants have willfully and wantonly disregarded Plaintiffs' statutory rights and Defendants' discrimination was undertaken in bad faith.

119.

As a direct and proximate result of the above-described unlawful employment practices, Plaintiffs have suffered and continues to suffer the indignity of race discrimination, the invasion of the right to be free from race discrimination, humiliation, emotional pain, mental distress, inconveniences and mental anguish, for which Plaintiffs are entitled to recover.

## COUNT V:
## RETALIATION
## IN VIOLATION OF FLSA, ADA, REHAB ACT, FMLA, AND § 1981
**(Dixon and Jackson Against the School District)**

120.

The FLSA, ADA, Rehab Act, FMLA, and Section 1981 prohibit employers from retaliating against an employee who opposes an employment practice prohibited by, or exercise or attempt to exercise rights under the FLSA, ADA, Rehab Act, FMLA, and Section 1981.

121.

At all relevant times, Plaintiffs were School District employees, who engaged in a protected activity while challenging and complaining about, among other unlawful conduct, the failure to pay FLSA-mandated wages and discrimination on the basis of race, age, and disability.

122.

During the relevant period, the relationships between Plaintiffs and Defendants were employer-employee relationships within the meaning of FLSA, ADA, Rehab Act, FMLA, and Section 1981, such that causes of action exist where retaliation on the basis of opposing and/or reporting discrimination, interference, and the failure to pay FLSA-mandated wages are alleged to be the causative agents of adverse employment action(s) directed to Plaintiffs by the School District.

123.

During the course of Plaintiffs' employment, the School District unlawfully and knowingly discriminated against Plaintiffs based upon age, race, and disability, interfered with the exercise of rights under the FMLA, and failed to pay FLSA-mandated wages.

124.

Plaintiffs complained to the School Board, Pauldo, Passmore, and other School District employees about unlawful employment practices in violation of the FLSA, ADA, Rehab Act, FMLA, Section 1981, and other Federal laws.

125.

Following Plaintiffs' complaints concerning unlawful employment practices, the School District immediately took adverse employment actions against Plaintiffs, including, but not limited to, subjecting Plaintiffs' to harassment and discrimination, denying Plaintiffs' compensation, assaults and batteries, denying leave, forced resignation and termination of employment without notice, cause, or justification, as well as the other unlawful employment actions alleged in the above-captioned complaint.

126.

The effect of the School District's actions has been to deprive Plaintiffs employment, as well as loss income in the form of wages, prospective retirement benefits, social security, and other benefits because of the exercise of Federally-protected rights.

127.

The School District's adverse employment action(s) constitute unlawful retaliation in violation of the FLSA, ADA, Rehab Act, FMLA, and Section 1981.

128.

The School District's retaliatory actions were willful, deliberate, and intended to cause harm and/or were committed with reckless and wanton disregard of the harm caused in derogation of Plaintiffs' Federally-protected rights.

129.

The School District's discriminatory and retaliatory actions were undertaken in bad-faith.

130.

The retaliation to which Plaintiffs were subjected by the School District entitles Plaintiffs to all appropriate relief afforded under the law.

131.

As a result of the School District's intentional and unlawful actions, Plaintiffs have suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to reputation, other indignities, as well as past and future pecuniary losses.

132.

Defendants' actions with respect to Plaintiffs have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of entitling Plaintiffs to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

### COUNTS VI AND VII:
### ASSAULT AND BATTERY
### IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
**(Dixon Against The School District and Wood)**

133.

Georgia law prohibits, among other things, intentional conduct causing physical harm to another person.

134.

Additionally, Georgia law prohibits, among other things, attempted batteries and/or conduct that places another person in reasonable apprehension of an immediate violent injury.

135.

At all relevant times, Dixon and Wood were employed by the School District.

136.

During the course of employment, Dixon was required, as a School Bus Driver and Bus Shop Helper, to work under the instruction and direct supervision of Wood.

137.

Despite Dixon's repeated objections, opposition, and professional conduct, Wood repeatedly harassed Dixon to retire, pulled off Dixon's hat and demanded to see underneath Dixon's wig, made a sexual comment towards Dixon, and repeatedly kicked Wood.

138.

Repeated physical attacks and assaults, which were willful, intentional, and directed towards Dixon by Wood for reasons personal to Wood proceeded from anger, rudeness, and/or lust.

139.

When Dixon refused to comply with and resisted the assaults and batteries, Wood escalated the unlawful conduct until Dixon was forced to resign employment.

140.

Although Dixon complained to the School Board concerning the assaults, batteries, and other unlawful conduct, the School District failed to take any remedial action.

141.

As a direct result of the repeated offensive comments, sexist remarks, forceful physical contact and assaults, as well as increasingly aggressive assaults and batteries, Dixon reasonably apprehended a violent injury and/or battery.

142.

All apparent circumstances, reasonably viewed, were such as to lead a person to reasonably apprehend a violent injury and/or battery from the unlawful conduct of Wood.

143.

Wood was not privileged, authorized, or justified when repeatedly touching and threatening Dixon.

144.

When repeatedly assaulting and battering Dixon, Wood was performing within the scope of Wood's employment with the School District.

145.

As the direct and proximate result of Defendants' intentional, willful, unlawful, and tortious conduct, Dixon has suffered, among other things, fear, humiliation, embarrassment, mental anguish, physical injuries, and damages in an amount to be determined at trial.

146.

Defendants' tortious actions and conduct were undertaken in bad-faith.

147.

The assaults and batteries to which Dixon was subjected by Defendants entitles Dixon to all appropriate relief afforded under the law.

148.

Defendants' actions with respect to Dixon have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care, and, thus, Dixon is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT VIII
## BREACH OF CONTRACT
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Jackson Against School District)

149.

The School and Jackson entered into an agreement and/or contract, wherein the School District agreed to pay Jackson $1,500.00 per month if Jackson agreed to perform as a School Bus Drive for the School District.

150.

The Parties' agreement and/or contract, which is supported by good and valuable consideration, constitutes the School District's unconditional promise to pay Jackson $1,500.00 per month compensation in exchange for Jackson's continued employment.

151.

Based upon the School District's promises and the Parties' agreement, Jackson continued to perform as a School Bus Driver for the school District while forgoing alternative employment opportunities.

152.

When continuing employment with the School District, Jackson performed pursuant to the terms and conditions of the Parties' agreement.

153.

Notwithstanding Jacksons several demands over multiple months, the School District breached the agreement when refusing and/or failing to pay Jackson $1,500.00 per month in compensation for Jackson's service and performance as a School Bus Driver for the School District.

154.

As a direct and proximate result of the School District's breach of the agreement, Jackson has been damaged in the difference in monthly compensation, interest, and litigation expenses associated with the collection of the admitted indebtedness.

155.

Because the School District have acted in bad faith, been stubbornly litigious, and/or caused Jackson unnecessary trouble and expense when breaching the Parties' agreement, Jackson is also entitled to recover the expenses of litigation associated with the School District's breach of contract.

## COUNT IX:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Dixon and Jackson Against All Defendants)

156.

Defendants' statements, conduct, behavior towards Plaintiffs were intentional and reckless, extreme and outrageous, causing Plaintiffs severe shame, humiliation, embarrassment, and emotional distress of a nature that no person should endure.

157.

At all relevant times, the Parties had a special, employer-employee relationship, where Defendants had control over Plaintiffs and Plaintiffs' sole source of income and/or livelihood during the global COVID-19 Pandemic.

158.

Defendants maliciously and repeatedly forced Plaintiffs to work without the required compensation, harassed Jackson about his serious medical condition, demanded that Jackson provide FMLA documents and that Jackson resign while hospitalized, unlawfully terminated Jackson's employment and medical insurance during Jackson's hospitalization, constantly harassed Dixon into retirement due to age, repeatedly assaulted and battered Dixon in the presence of co-workers, as well as the other unlawful actions described in the above-captioned complaint

159.

Defendants' statements, conduct, and behavior towards Plaintiffs demonstrate, among other things, a "retaliatory animus."

160.

Defendants knew or should have known that such conduct would result in severe emotional distress suffered by Plaintiffs.

161.

As a result of Defendants' conduct, Plaintiffs have and will continue to suffer severe emotional distress and other damages for which Plaintiffs are entitled to recover.

## COUNT X:
## NEGLIGENT HIRING, RETENTION AND SUPERVISION
## IN VIOLATION GEORGIA
**(Dixon and Jackson Against the School District)**

162.

As a result of the actions taken by Defendants, Plaintiffs suffered, among other things, unpaid wages, discrimination based on race, age, and disability, interference, retaliation, assaults, batteries, and severe emotional distress resulting from the unlawful, malicious, and tortious conduct described herein.

163.

The School District owed Plaintiffs a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in malicious, discriminatory, or tortious conduct.

164.

The School District knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, including, but not limited to, Wood, Franks, Pauldo, Passmore, and other School District employees, to engage in unlawful, malicious, and tortious conduct against Plaintiffs.

165.

By failing to engage in any corrective or remedial action in response to Plaintiffs' complaints, Defendants ratified, condoned, and/or adopted its employee's unlawful, malicious, and tortious conduct.

166.

In fact, despite Plaintiffs' complaints about the unlawful conduct of School District employees described herein, the School District failed to take any remedial or corrective action.

167.

As a direct and proximate result of the School District's negligent hiring, retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to known unlawful actions taken by employees, Plaintiffs suffered damages.

168.

The School District's negligent conduct entitles Plaintiffs to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Court:

1)   Grant Plaintiffs a trial by jury as to all triable issues of fact;

2)   Grant declaratory judgement that Plaintiffs' rights under, *inter alia*, the FLSA, ADA, Rehab Act, FMLA, Section 1981, and the laws of the State of Georgia were violated;

3)   Grant an injunction prohibiting Defendants from engaging in such unlawful conduct in the future;

4)   Award compensatory damages in an amount determined by a jury;

5)   Award appropriate back pay, unpaid wages, and compensatory for other damages an amount proven at trial;

6)      Award liquidated damages;

7)      Award punitive damages in an amount commensurate with the harm

done and calculated to be sufficient to deter such future conduct;

8)      Award pre-judgment interest on any monetary award;

9)      Award Plaintiffs' attorneys' fees, costs, and disbursements; and

10)     Award Plaintiffs such further and additional relief as may be just and

appropriate.

Respectfully submitted, this 31st day of August, 2021.

MOLDEN & ASSOCIATES[4]

_____

REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiffs Willie Bell Dixon and Derrell A. Jackson*

---

[4] Although Attorney T. Orlando Pearson has been admitted to the U.S. District Court for the Southern District of Georgia, upon the filling of the above-captioned case and the assignment of the Civil Action Number, Attorney Regina S. Molden will file an Application for Admission Pro Hac Vice.

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## DUBLIN DIVISION

WILLIE BELL DIXON and
DERRELL A. JACKSON,

      Plaintiffs,

      vs.

LAURENS COUNTY SCHOOL
DISTRICT, BRUCE WOOD, and
SUNNY FRANKS,

      Defendants.

CIV. ACTION NO. _____

**JURY TRIAL DEMANDED**

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned certifies that this document has been prepared in accordance with the Court's Local Rules and filed with the Clerk using the CM/ECF system which will notify to the attorney(s) of record.

Respectfully submitted, this 31st day of August, 2021.

MOLDEN & ASSOCIATES

_____
T. ORLANDO PEARSON
Georgia Bar No. 180406